1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ANDREA FAGERSTROM and                    Case No. 15-cv-96-BAS-DHB
     ALLEN WISELEY, individually and
12   on behalf of all other similarly situated   **ORDER GRANTING**
     Californians,                             **DEFENDANT'S MOTION TO**
13                                             **COMPEL ARBITRATION**

14                              Plaintiffs,

15   v.

16   AMAZON.COM, INC., a Delaware
     corporation; and DOES 1 through 50
17   inclusive,

18                              Defendants.

19

20          Plaintiffs Andrea Fagerstrom ("Fagerstrom") and Allen Wiseley ("Wiseley")

21   filed this putative class action against Defendant Amazon.com, Inc. ("Amazon")

22   alleging California state law claims related to false advertising and unfair business

23   practices. (ECF No. 1, Attach. 3) The suit was originally filed in state court and

24   removed to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

25   (ECF No. 1.) Amazon now moves to compel arbitration and dismiss Plaintiffs' claims

26   based on the arbitration agreement ("Arbitration Agreement" or "Agreement")

27   Plaintiffs agreed to when they made purchases through Amazon. (ECF No. 11.)

28   Plaintiffs filed an opposition—arguing that the Agreement is illusory or, in the

                                        – 1 –

1   alternative, unconscionable—to which Amazon replied. (ECF No. 16; ECF No. 17.)

2   The Court finds this motion suitable for decision on the papers and without oral

3   argument. *See* Civ. L.R. 7.1(d)(1). Accordingly, the Court **DENIES** Plaintiffs' *ex*

4   *parte* motion for oral argument. (ECF No. 18.)

5   For the reasons that follow, the Court **GRANTS** Amazon's Motion to Compel

6   Arbitration and **DISMISSES** this action without prejudice. Plaintiffs' *ex parte*

7   application to file supplemental authority is **DENIED AS MOOT**. (ECF No. 24.)

8   **I.    BACKGROUND**

9   This suit arises from the advertising practices of the nation's largest online

10   retailer. Amazon's business model, which emphasizes shipping products from

11   warehouses and distribution centers rather than maintaining traditional brick-and-

12   mortar retail locations, has allowed the company to build a reputation for offering

13   lower prices than its traditional competitors. (First Am. Compl. (FAC) 3:5–18.) To

14   convey to consumers the purported superiority of its prices, Amazon advertises in a

15   way that highlights the discount consumers can expect by purchasing through Amazon

16   rather than from competing retailers. To do this, Amazon follows a basic price listing

17   approach. (FAC 3:19–28.)  First, Amazon displays on its website the "list price" of an

18   item—that is, the item's "normal retail price"—with the typeface struck through (e.g.

19   "List Price: ~~$225.00~~"). Second, Amazon displays the "Amazon price" in contrasting

20   red font (e.g. "Price: $211.68"). And finally, Amazon highlights the amount that a

21   consumer can save by purchasing the item through Amazon by listing the purported

22   cost savings as a dollar amount and as a percentage (e.g. "You Save: $13.32 (6%)").

23   Plaintiffs Fagerstrom and Wiseley are both California residents who purchased

24   products through Amazon. (FAC 5:10–6:8.) Fagerstrom alleges that when she

25   purchased a Vitamix blender from Amazon in September 2014, Amazon displayed a

26   "list price" of $329, an "Amazon price" of $299, and savings of $30.00 or 9%.

27   Fagerstrom alleges, among other things, that this price listing amounts to false and

28   deceptive advertising in violation of California law because the "Amazon price" of

$299 was actually the normal retail price being offered by other retailers, such as Target.com, and by the manufacturer itself. (FAC 5:17–24.) In other words, Fagerstrom claims that Amazon's "discount" was no discount at all.

Plaintiff Wiseley purchased a digital to analog audio converter from a third-party seller on Amazon in April 2013. (FAC 5:25–27.) Wiseley alleges that when he purchased the converter, Amazon displayed a "list price" of $59, a third-party seller's price of $21, and purported savings of $48.00 or 64%. (FAC 5:27–6:8.) Wiseley alleges that this price listing constitutes false and deceptive advertising in violation of California law partly because "[s]imilar digital to analog audio converters currently sell for substantially less than $59 in the online retail market." (FAC 6:5–6.) According to Plaintiffs, Amazon creates a false impression of considerable cost savings by cherry-picking the highest price it can find for the item and using that price to create a significant price discrepancy between the Amazon price and list price. (FAC 4:4–8.) Plaintiffs allege that this price-listing practice violates California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*; and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.[1] (FAC 11:19–20:27.)

Like all customers making purchases through Amazon, Plaintiffs were required to complete their orders by reviewing a final checkout page and clicking a "Place your order" button located on that page. (Pls. Opp'n 17:20–18:4.) At the top of the checkout page, under the heading "Review your order," there is a notice to customers stating that "By placing your order, you agree to Amazon.com's <u>privacy notice</u> and <u>conditions of use</u>."[2] The phrases "privacy notice" and "conditions of use" (COUs) are set off in blue-color text that hyperlinks to the full text of the privacy notice and COUs, respectively. The COUs include the Arbitration Agreement at issue here. The version

---

[1] Plaintiffs also assert claims for negligent misrepresentation and declaratory relief. (FAC 21–22.)

[2] The Court underlines "privacy notice" and "conditions of use" here to emphasize that these words are written in blue-color text on the Amazon checkout page. The words are not actually underlined on Amazon's website.

of the COUs in effect at the time Plaintiffs made their purchases were last updated on December 5, 2012. (Weitmann Decl., Exh. A.)

Amazon's Arbitration Agreement states in part:

> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court**, except that you may assert claims in small claims court if your claims qualify. . . .
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages)**. . . .
>
> The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer–Related Disputes. . . . We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines that the claims are frivolous. Likewise, Amazon will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.
>
> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated, or representative action**. . . . We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

(Weitmann Decl., Exh. A at 8) (emphasis in original.)

The Arbitration Agreement also incorporates a choice-of-law provision applicable to the COUs as a whole. That provision states:

> By using any Amazon Service, you agree that the Federal Arbitration Act, applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

– 4 –

1  *Id.*

2       Finally, the COUs include a change-in-terms provision that applies to the

3  Arbitration Agreement. The change-in-terms provision states in part:

4       We reserve the right to make changes to our site, policies, Service
5       Terms, and these Conditions of Use at any time.

6  *Id.*

7       Amazon argues that Plaintiffs' state law claims concerning Amazon's price-

8  listing practices must be submitted to arbitration pursuant to the Agreement because

9  (1) Plaintiffs agreed to the COUs and to the Arbitration Agreement when they made

10  their purchases through Amazon,[3] and (2) Plaintiffs' allegations are a "dispute or

11  claim" within the meaning of the Arbitration Agreement. (Def.'s Mot. to Compel

12  1:16–2:13; 11:4–15.) Plaintiffs do not dispute that they consented to the Arbitration

13  Agreement when they placed their orders with Amazon, nor do they dispute that the

14  claims at issue fall within the coverage of the Agreement. (Pls.' Opp'n 7:1–2; 17, n.

15  12.) Instead, Plaintiffs contend that the Arbitration Agreement itself is unenforceable

16  because it is illusory or, in the alternative, procedurally and substantively

17  unconscionable. (ECF No. 16.)

18  **II.    LEGAL STANDARD**

19       **A.    The Federal Arbitration Act**

20       The Federal Arbitration Act ("FAA") provides that contractual arbitration

21  agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as

22  exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act

23  reflects a "national policy favoring arbitration," *Preston v. Ferrer*, 552 U.S. 346, 349

24  (2008) (citation omitted), and emphasizes that valid arbitration agreements must be

25  ─────────────────

26  [3] Amazon points out that Plaintiffs accepted Amazon's COUs and Arbitration Agreement on
    multiple occasions other than the specific purchases under which Plaintiffs bring their claim. The
27  record is undisputed that Fagerstrom made at least three purchases through Amazon, including a
    transaction made after she filed her complaint in this case. (Def.'s Mot. to Compel 2:14–21.)
28  Wiseley made at least six purchases. (Def.'s Mot. to Compel 2:22–3:3.) All of these purchases
    required Plaintiffs to accept Amazon's COUs before placing their order.

"rigorously enforced" according to their terms. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. — , 133 S. Ct. 2304, 2309 (2013); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1748 (2011) ("The 'principal purpose' of the FAA is to 'ensure[e] that private arbitration agreements are enforced according to their terms.'") (citation omitted). In light of this clear federal policy, and the mandatory terms of the Act itself, "a district court has little discretion to deny an arbitration motion" once it determines that a claim in litigation is covered by a written and enforceable arbitration agreement. *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Thus, the court's role under the FAA is limited to determining (1) whether a valid arbitration agreement exists and, if so, (2) whether the scope of the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If a party seeking arbitration establishes these two factors, the court must compel arbitration." *Farrow v. Fujitsu Am., Inc.*, 37 F.Supp.3d 1115, 1119 (N.D. Cal. 2014) (citing *Chiron Corp.*, 207 F.3d at 1130); *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added).

Although the FAA evinces a strong presumption in favor of arbitration, the Act "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). The final phrase of 9 U.S.C. § 2 permits courts to declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This savings clause reflects the fundamental principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Pursuant to this clause, courts may apply "generally applicable contract defenses, such as fraud, duress, or unconscionability"

to invalidate an arbitration agreement. *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Thus, while the FAA emphasizes the enforcement of valid arbitration agreements, the Act also envisions a role for courts to decide questions concerning the validity of arbitration agreements in the first instance. 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."); *see also Rent–A–Center*, 561 U.S. at 71 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). Courts perform this function by applying general principles of contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (citations omitted); *see also Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (noting that under the FAA state law governs issues concerning the validity, revocability, and enforceability of arbitration agreements so long as that law arose to govern contracts generally, rather than to deal with arbitration agreements specifically).

There are two exceptions to the general rule that courts decide questions concerning the validity of an arbitration agreement. First, where the parties have "clearly and unmistakably" delegated the question of arbitrability to the arbitrator, the validity of the arbitration agreement is a question for the arbitrator to decide, rather than the court. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Second, when a party's challenge is to the contract as a whole, rather than specifically to an arbitration agreement contained within it, the arbitrator decides the validity of the contract, and by extension the validity of constituent provisions such as the arbitration clause. *Buckeye*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the

arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

To determine whether a challenge is to an arbitration provision alone or to an entire contract, courts evaluate the "crux of the complaint" or, under appropriate circumstances, the arguments made in a party's opposition to a motion to compel. *See Bridge Fund*, 622 F.3d at 1002 ("[W]e look not only to the complaint, but to Plaintiffs' motion papers, to determine if Plaintiffs' objections to the arbitration clause are severable from Plaintiffs' challenge to the validity of the . . . agreement as a whole."). When the "substantive basis of the challenge" is to the arbitration provision, the court resolves the question. *Bridge Fund*, 622 F.3d at 1001; *see also Rent–A–Center*, 561 U.S. 63, 71 (2010) ("[W]e . . . require the basis of the challenge to be directed specifically to the agreement to arbitrate before the court will intervene."). However, when the challenge is a general challenge to the overarching contract, the challenge goes to the arbitrator. *Buckeye*, 546 U.S. at 449.

**B.   Choice of Law**

"Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Where, as here, a court exercises diversity jurisdiction, it makes that determination by applying the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, the forum state is California, while the choice of law the parties have agreed to is Washington state law. Thus, the Court applies California choice-of-law rules to determine whether California or Washington law will govern here.

California courts apply the principles of the Restatement (Second) of Conflict of Laws, section 187, to determine the enforceability of contractual choice-of-law provisions. *Nedlloyd Lines B.A. v. Super. Ct.*, 834 P.2d 1148 (Cal. 1992). Where the parties have agreed that another jurisdiction's laws will govern their disputes, the

Restatement approach strongly favors enforcing that choice. *Nedlloyd*, 834 P.2d at 1149 ("[T]he choice-of-law rules derived from California decisions and the Restatement Second of Conflict of Laws . . . reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses."); *see also* Restatement (Second) of Conflict of Laws, § 187, cmt. e (1971) (explaining that "letting the parties choose the law to govern the validity of the contract and the rights created thereby" helps "protect the justified expectations of the parties" and "make[s] it possible for them to foretell with accuracy what will be their rights and liabilities under the contract").

Under the *Nedlloyd*/Restatement approach, the court must first determine: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. *Nedlloyd*, 834 P.2d at 1152. If there is neither a substantial relationship nor a reasonable basis, "that is the end of the inquiry and the court need not enforce the parties' choice of law." *Id*. However, if either test is met, the court must apply the following analysis:

> [T]he court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. . . . If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id*. (emphasis in original). The burden is on the party opposing the choice-of-law provision to establish both the "fundamental conflict" and "materially greater interest" prongs. *Wash. Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071 (Cal. 2001). This is a high bar. As the Restatement makes clear, "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained

under the local law of the [forum]." Restatement (Second) Conflict of Laws § 187 cmt. g.

## III.   DISCUSSION

### A. The Validity of the Arbitration Agreement is a Question for the Court

As a threshold matter, the Court must address Amazon's argument that Plaintiffs' challenge to the validity of the Arbitration Agreement is actually a challenge to the COUs as a whole, and so is a question for the arbitrator, rather than the Court. Specifically, Amazon contends that because Plaintiffs' argument that the Agreement is illusory is based on a change-in-terms provision applicable to the COUs as a whole, Plaintiffs are in effect challenging the entire contract. (Def.'s Reply 1:26– 3:3.) This Court disagrees. It is clear from Plaintiffs' opposition that "the substantive basis of the challenge" is to the Arbitration Agreement, not to the COUs as a whole. *Bridge Fund*, 622 F.3d at 1002. For example, Plaintiffs argue that by reserving the right to make changes to the COUs at any time, "Amazon can enforce *the arbitration agreement* against a consumer regarding virtually any dispute, but is free to strike *the Arbitration Clause* when it benefits its own interest." (Pls.' 12:16–18.) Plaintiffs also contend that the discretion reserved to Amazon under the change-in-terms provision means that "there is no modicum of mutuality *within Amazon's Arbitration Clause* rendering *it* [i.e., the arbitration clause] unenforceable as a matter of law." (Pls.' 13:6– 7.) Put simply, the crux of Plaintiffs' argument is that the change-in-terms provision renders *the Arbitration Agreement* illusory and unenforceable; Plaintiffs at no point argue that the COUs as a whole are invalid, or that the change-in-terms provision renders them such. *See Buckeye*, 546 U.S. at 444 ("[A]s a matter of substantive federal arbitrational law, an arbitration provision is severable from the remainder of the contract."). Thus, Plaintiffs' challenge is "specifically [to] the validity of the agreement to arbitrate," and is a matter properly decided by this Court. *Id*.

### B.   Washington Law Applies in This Case

As noted above, the COUs contain a choice-of-law provision stating that the

Arbitration Agreement is governed by the FAA and the laws of Washington state. The parties concur that the *Nedlloyd*/Restatement approach provides the appropriate analytical framework for determining whether California or Washington law applies. They also agree that under the Restatement analysis Washington has a "substantial relationship to the parties or their transaction" because Washington is Amazon's principal place of business. (Pls.' Opp'n 7:22–23.) The parties differ, however, in their assessment of whether applying Washington law to review the validity of the Arbitration Agreement would contradict a fundamental policy of California. Plaintiffs suggest, without arguing directly, that applying Washington law would undermine California's fundamental policy against unconscionable consumer contracts. (Pls.' Opp'n 8:19–9:15.) Amazon contends that "the two states' unconscionability laws are parallel" and that Plaintiffs have not met their burden to establish that Washington law would violate a fundamental policy of California. (Def.'s Reply 5, n. 7.) This Court agrees with Amazon.

Plaintiffs assert that California has a fundamental public policy prohibiting the inclusion of unconscionable terms "specifically within consumer agreements." (Pls.' Opp'n 8:21–24.) In Plaintiffs' view this purportedly heightened protection for California consumers means that California and Washington laws regarding unconscionability are materially different. (Pls.' Opp'n 8:19–9:15.) The problem with this argument, however, is that Plaintiffs reference no Washington statute or Washington case law to demonstrate this material difference. That is, Plaintiffs assert that California has a fundamental policy against unconscionable consumer contracts, but they make no claim regarding whether, or how, Washington law runs contrary to that policy. (Pls.' Opp'n 9:11–13.) This is a critical omission because the test under the Restatement is not whether the forum state *has* a fundamental policy, but whether the law of the chosen state runs *contrary to* that policy. Without making, or attempting to make, such a showing, Plaintiffs cannot meet their burden to establish a fundamental conflict that would justify not applying Washington law.

A review of California and Washington laws concerning consumer protection and unconscionability suggests why Plaintiffs were reluctant to draw a comparison explicitly in their brief. If the two state's laws are not equally protective of consumers, and equally hostile to unconscionable terms in consumer contracts, they are certainly close. The Washington Supreme Court has stated that it is "the strong public policy of Washington's Consumer Protection Act [CPA] that consumers be able to vindicate their right to be free of unfair and deceptive practices in consumer transactions." *McKee v. AT & T Corp.*, 191 P.3d 845, 853 (Wash. 2008); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 534–35 (Wash. 1986) (providing a brief history of Washington's robust consumer protection laws); *Testo v. Russ Dunmire Oldsmobile, Inc.*, 554 P.2d 349, 358 (Wash. Ct. App. 1976) ("The declared purpose of the Consumer Protection Act is to compliment the federal trade laws in order to protect the public and foster fair and honest competition, and to that end the act must be liberally construed."). This policy is advanced, among other ways, through "Washington's laws regarding the formation of consumer contracts," in which unconscionability doctrine plays a key role. *McKee*, 191 P.3d at 853; *Mellon v. Reg'l Tr. Servs. Corp.*, 334 P.3d 1120, 1126–27 (Wash. Ct. App. 2014) (holding that the act of advancing a substantively or procedurally unconscionable contract term can qualify as an unfair act or practice that violates the CPA); *State v. Kaiser*, 254 P.3d 850, 859–60 (Wash. Ct. App. 2011) (noting that grossly unfair or unconscionable contracts violate Washington's CPA). In both Washington and California, unconscionability doctrine is rooted in the same policy concerns, involves a similar doctrinal test, and is applied in similar fashion. *Compare Armendariz v. Found. Health Psychcare Services, Inc.*, 6 P.3d 669, 690 (Cal. 2000); *and Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138 (Cal. Ct. App. 1997), *with Adler v. Fred Lind Manor*, 103 P.3d 773 (Wash. 2004). Washington's Uniform Commercial Code (UCC), which applies to transactions in goods, contains a provision on unconscionable contracts that mirrors

exactly the California Civil Code's provision on the subject.[4] In fact, a plausible case can be made that Washington's unconscionability doctrine is *more* protective of consumers than California's for the reason that California courts require a showing of both substantive *and* procedural unconscionability before finding a contract unenforceable, *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015), while under Washington law substantive *or* procedural unconscionability is sufficient. *Gandee v. LDL Freedom Enterprises, Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). Given Washington's clear public policy against unconscionable contracts, including consumer contracts, it cannot be said that Washington law fundamentally conflicts with California law. Accordingly, the Court applies the laws of Washington state for purposes of interpreting the Arbitration Agreement.

## C.    The Arbitration Agreement is Not Illusory

Under Washington law, which generally follows the Restatement approach, "[a]n illusory promise is one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor." *Lane v. Wahl*, 6 P.3d 621, 624 (Wash. Ct. App. 2000) *citing King County v. Taxpayers of King County*, 949 P.2d 1260 (Wash. 1997); *see also Sandeman v. Sayres*, 314 P.2d 428, 429 (Wash. 1957); *Spooner v. Reserve Life Ins. Co.*, 287 P.2d 735, 738 (Wash. 1955). "Generally an agreement that reserves the right for one party to cancel at his or her pleasure cannot create a contract." *Lane*, 6 P.3d at 624; *see also* 2 Corbin on Contracts § 5.28 (rev. ed. 1995) ("If A makes an illusory promise, A's

[4] Plaintiffs suggest that because California's Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA) prohibit unconscionability *specifically* in consumer transactions, Washington's lack of similarly specific provisions reflects a policy that is less protective of consumers. This argument fails for at least two reasons. First, even if Washington law contains no specific analog to California's UCL and CLRA, this does not *per se* create a conflict a laws. *See, e.g., Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008) (finding that even though California had separate statutes concerning false advertising and unfair competition, while Texas did not, this difference alone did not present a conflict of laws). Second, Washington's UCC extends unconscionability doctrine to "transactions in goods," a category that by its plain meaning includes the consumer transactions at issue here. Rev. Code Wash. §§ 62A.2–102, 62A.2–302; *see also Mieske v. Bartell Drug Co.*, 593 P.2d 1308, 1312 (Wash. 1979).

1   words leave A's future action subject to A's own future whim, just as it would have

2   been had A said nothing at all."). One of the primary reasons that an illusory promise

3   is unenforceable is because the indefiniteness of such a promise precludes the court

4   from being able to "fix exactly the legal liability of the parties" to the contract.

5   *Sandeman*, 314 P.2d at 429.

6        Plaintiffs argue that the Arbitration Agreement is illusory because Amazon,

7   pursuant to the COUs, reserves the right to make changes to the Agreement at any

8   time without prior notice. (Pls.' Resp. 12:11–13.) Plaintiffs contend that because there

9   are no restrictions on Amazon's ability to amend the Agreement, Amazon's

10  performance obligations are, in fact, entirely optional, while Plaintiffs are bound to

11  perform. This imbalance in performance obligations, Plaintiffs emphasize, violates

12  the bedrock principle of contract law that there can be no valid agreement without

13  mutuality of obligation. (Pls.' Resp. 12:9–13:7.)

14       Amazon raises two primary arguments in response. First, Amazon argues that

15  the Agreement is not illusory because both Plaintiffs and Amazon have incurred

16  performance obligations under the Agreement, and those obligations remain fixed.

17  (Def.'s Reply 2:7–3:3.) Second, Amazon argues that the Agreement is not illusory

18  because even if Amazon invoked the change-in-terms provision, it would be bound

19  by the duty of good faith to carry out its contractual obligations. (Def.'s Reply 5:9–

20  11.) The Court agrees with Amazon on both points and thus finds that the Arbitration

21  Agreement is not illusory.

22       **1. Amazon Has Performance Obligations under the Agreement**

23       Although Amazon retains discretion to make changes to the Arbitration

24  Agreement, such discretion does not make the Agreement illusory. Here, both

25  Plaintiffs and Amazon have incurred performance obligations under the Agreement,

26  and those performance obligations remain in place based on the assent manifested by

27  the parties and the consideration exchanged. Restatement (Second) of Contracts § 71

28  (1979) ("A performance or return promise is bargained for if it is sought by the

promisor in exchange for his promise and is given by the promisee in exchange for that promise."); Restatement (Second) of Contracts § 231, cmt. a ("Ordinarily when parties make such an agreement [involving an exchange of promises], they not only regard the promises themselves as the subject of an exchange, but they also intend that the performances of those promises shall subsequently be exchanged for each other."). Plaintiffs have paid money to Amazon and promised to arbitrate disputes, and Amazon has processed the payments and made a return promise to arbitrate. Consideration has been exchanged; obligations have been triggered on both sides. This makes the contract enforceable. *See SAK & Assocs., Inc. v. Ferguson Const., Inc.*, No. 72258–1–I, 2015 WL 4726912, at *3 (Wash. Ct. App. Aug. 10, 2015) (explaining that when consideration has been exchanged, "Washington courts will not give effect to interpretations that would render contract obligations illusory"); 13 Corbin on Contracts § 68.9, at 247–48 (rev. ed. 1995) ("As long as the party with the reserved power to terminate is irrevocably bound for any period of time or has materially changed any of its legal relations or otherwise rendered some performance capable of operating as a consideration, consideration has been given and the other's promise is enforceable."). Furthermore, while on its face the change-in-terms provision grants Amazon unrestricted discretion to modify the Agreement, this provision must be viewed in light of the Agreement as a whole. *See Adler v. Fred Lind Manor*, 103 P.3d 773, 784–85 (Wash. 2004) ("The context rule requires that we determine the intent of the parties by viewing the contract as a whole, which includes the subject matter and intent of the contract, examination of the circumstances surrounding its formation, [and] subsequent acts and conduct of the parties[.]"). When viewed accordingly, it is clear that the bilateral promise to arbitrate disputes is a fundamental part of the Agreement—a core obligation on which the rest of the Agreement hinges. Under these circumstances, the Court finds it inappropriate to adopt an interpretation that would allow a boilerplate change-in-terms provision applicable to the COUs as a whole to nullify a core obligation of the Agreement. *See,*

*e.g.*, 2 Corbin on Contracts § 5.32 ("When words are put in promissory form, courts are loath to give them an interpretation that makes them empty in fact and misleading to others."); Restatement (Second) of Contracts § 203 ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]").[5]

## 2.  Amazon is Bound by the Duty of Good Faith and Fair Dealing

There is another reason why Amazon's discretion under the Agreement is not as unrestricted as Plaintiffs suggest. Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dept. of Soc. and Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014); *see also* Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). This duty arises only in connection with specific contractual obligations, and does not give rise to a "free-floating obligation" of good faith by the parties. *Rekhter*, 323 P.3d at 1041. In particular, the duty of good faith applies where, as here, "the contract gives one party discretionary authority to determine a contract term." *Id*. at 1041. This duty limits the authority of the party retaining discretion under the contract and promotes "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts, § 205, cmt. a. Therefore, because Amazon is the party that retains discretion, Amazon is bound to exercise that discretion consistent with the duty of good faith and fair dealing. *See Rekhter*, 323 P.3d at 1042 ("[W]hen a party has discretion over a . . . contract term, it has an implied duty of good faith and fair dealing in setting and performing that contractual term.").

The restriction on Amazon's discretion imposed by the duty of good faith and

---

[5] The irony here, of course, is that Amazon is attempting to *carry out* its core obligation to arbitrate even as Plaintiffs argue that Amazon has no such obligation.

fair dealing saves the Agreement from being illusory. 2 Corbin on Contracts § 5.28 ("If there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory. . . . An implied obligation to use good faith is enough to avoid the finding of an illusory promise."). Here, Amazon made a promise to Plaintiffs that "any dispute or claim . . . will be resolved by binding arbitration." Plaintiffs are justified in expecting Amazon to carry out this core obligation should a dispute or claim arise, just as Amazon is attempting to do here. *See* 2 Corbin on Contracts § 1.13 ("A promise is an expression of commitment to act in a specified way, or to bring about a specified result in the future . . . communicated in such a way that the addressee of the expression may justly expect performance and may reasonably rely thereon."). As the party who retains discretion to make changes to the Arbitration Agreement, Amazon must exercise this discretion in a manner consistent with "the spirit of the bargain" and Plaintiffs' justified expectations under the contract. *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001); *see also* Restatement (Second) § 205, cmt. d ("Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified."). Thus, Plaintiffs' concern that Amazon could modify the Agreement to avoid pending arbitration if Amazon determined that arbitration was no longer in its interest is unfounded. Amazon could not, in fact, interpret the Agreement to allow Amazon to arbitrate or not arbitrate particular disputes as it saw fit, and Washington courts will not give effect to an interpretation that would produce such a result. *See SAK & Assocs.*, 2015 WL 4726912, at *3; *Taylor v. Shigaki*, 930 P.2d 340, 344 (Wash. Ct. App. 1997) (applying the duty of good faith and fair dealing to uphold a contract and explaining that "the court will not give effect to interpretations that would render contract obligations illusory"); *see also* 2 Corbin on Contracts § 5.32 ("When it appears to a court's satisfaction that the parties have believed themselves to be making a contract and to be affecting their legal relations with each other, sound practical policy requires that their mutual expressions be given an interpretation that will

1    effectuate their belief and intention.").

2    Plaintiffs' long string of federal and California case citations do not save their
3    argument. (Pls.' Opp'n 12:9–15:7.) These cases almost without exception fail to
4    consider the limitations imposed by the duty of good faith and fair dealing on a party's
5    exercise of discretion in interpreting a contract term. The one case that Plaintiffs cite
6    that expressly acknowledges the duty of good faith and declines to interpret that duty
7    as imposing a limit on a party's discretion analyzes the question in connection with
8    substantive unconscionability rather than illusoriness. *Montes v. San Joaquin*
9    *Community Hosp.*, No. 1:13–cv–01722–AWI–JLT, 2014 WL 334912, at \*13–14
10   (E.D. Cal. Jan. 29, 2014). Furthermore, the California case on which the *Montes*
11   holding is based actually supports the proposition that a unilateral right to modify a
12   contract is not necessarily fatal to its enforcement. *See Asmus v. Pacific Bell*, 999 P.2d
13   71, 79 (Cal. 2000) (finding that a contract under which one of the parties retained an
14   unqualified right to modify or terminate the agreement was not illusory because both
15   parties obtained the benefits of the contract while it was in effect). Thus, Plaintiffs
16   have not shown that the duty of good faith and fair dealing—a duty imposed upon
17   each party in every contract—does not apply here.

18   In sum, the Court finds that Amazon's discretion to change the terms of its
19   Arbitration Agreement (1) does not impact the enforceability of Amazon's core
20   obligation under the Agreement to arbitrate disputes, and (2) is governed by an
21   implied duty of good faith and fair dealing that obligates Amazon to exercise its
22   discretion in a manner consistent with Plaintiffs' reasonable expectations.
23   Accordingly, the Court finds that Amazon's Arbitration Agreement is not illusory.

24   **D.    Unconscionability**

25   Plaintiffs argue that even if the Arbitration Agreement is not illusory, it is
26   unenforceable because it is unconscionable. Washington courts recognize two
27   categories of unconscionability, procedural and substantive. *Zuver v. Airtouch*
28   *Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004) (citation omitted). Procedural

unconscionability is present when there is a "lack of a meaningful choice, considering all the circumstances surrounding the transaction," including (1) "the manner in which the contract was entered," (2) whether the party had "a reasonable opportunity to understand the terms of the contract," and (3) whether "the important terms [were] hidden in a maze of fine print." *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23 (Wash. 1975) (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one–sided or overly harsh[.]" *Adler*, 103 P.3d at 781 (quoting *Schroeder*, 544 P.2d at 23). Terms used to define substantive unconscionability include "shocking to the conscience," "monstrously harsh," and "exceedingly calloused." *Zuver*, 103 P.3d at 759. "In Washington, either substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee*, 293 P.3d 1197, 1199 (Wash. 2013); *see also Hill v. Garda CL Nw., Inc.*, 306 P.3d 635, 638 (Wash. 2013). The party attacking the contract or contract terms bears the burden of proving unconscionability. *See Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Wash. Ct. App. 2001).

### 1. Procedural Unconscionability

Plaintiffs first argue that the Arbitration Agreement is procedurally unconscionable because it is a contract of adhesion. (Pls.' Opp'n 15:25–16:25.) Washington courts analyze the following factors to determine whether an adhesion contract exists: (1) whether the contract is a standard form contract, (2) whether it was prepared by one party and submitted to the other on a "take it or leave it" basis, and (3) whether there was no true equality of bargaining power between the parties. *Yakima Cty. (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 257 (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n. 5 (9th Cir. 1965)). The fact that a contract is an adhesion contract is relevant to, though not dispositive of, the procedural unconscionability inquiry. *Id*.

The Court agrees with Plaintiffs that the Arbitration Agreement is a contract of

adhesion. The Agreement is a standard form contract presented to all customers who place online orders through Amazon. The Agreement was prepared by Amazon and presented to Plaintiffs as a condition of using Amazon's services, i.e., on a "take it or leave it" basis. There is no indication that Plaintiffs enjoyed an "equality of bargaining power" with Amazon such that Plaintiffs could negotiate the terms of the Agreement with the company. "However, the fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable." *Zuver*, 103 P.3d at 760. Whether or not a contract is one of adhesion, the key inquiry for finding procedural unconscionability is whether the party challenging the contract lacked meaningful choice. *Id*. at 761.

Plaintiffs set forth three main arguments to demonstrate a lack of meaningful choice. First, Plaintiffs contend that customers are not put on sufficient notice of the COUs because the notice is in smaller font than the surrounding text and is not located directly adjacent to the "Place your order" button.[6] (Pls.' Opp'n 17:17–18:12.) Second, Plaintiffs argue that the incorporation of the Arbitration Agreement—which is in the middle of a webpage accessed after clicking on the

---

[6] Plaintiffs' argument that they were not placed on sufficient notice of the Arbitration Agreement stems primarily from their conclusion that the Agreement is more akin to a "browsewrap" agreement than a "clickwrap" agreement. "With a browsewrap agreement, a website owner seeks to bind website users to terms and conditions by posting the terms somewhere on the website, usually accessible through a hyperlink located somewhere on the website[.]" *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 893 F.Supp.2d 1058, 1063 (D. Nev. 2012). A "clickwrap agreement," on the other hand, "requires users to expressly manifest assent to the terms by, for example, clicking an 'I accept' button." *Id*. The latter is generally viewed as an acceptable method of obtaining assent, while the former is viewed with much more suspicion. In hopes of generating such suspicion, Plaintiffs expend significant effort arguing that Amazon's Agreement is of the "browsewrap" variety.

It is clear from the case law, however, that what ultimately matters is the sufficiency of the notice provided, not the formalities of the "browsewrap" or "clickwrap" definitions. *See, e.g., Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770, 790–91 (N.D. Ill. 2011). Plaintiffs themselves acknowledge this, even as they invoke the categorical distinction as the focal point of their argument. (Pls.' Opp'n 17:13–15.) Accordingly, this Court does not attempt to fit the Amazon Agreement into one box or the other, but instead focuses the inquiry on whether reasonable notice was provided. The factors relevant to this inquiry can be considered without resort to the deceptive sense of analytical certainty invited by the "browsewrap"–"clickwrap" distinction.

1    COUs hyperlink—is "the electronic equivalent of fine print." (Pls.' Opp'n 18:16–
2    24.) Third, Plaintiffs argue that customers seeking out the applicable American
3    Arbitration Association (AAA) rules are "uniquely burdened" because Amazon only
4    incorporates those rules by reference, rather than provide customers a copy, and
5    because the reference itself is "extremely ambiguous." (Pls.' Opp'n 19:16–21:13.)
6    Amazon responds that Plaintiffs had reasonable notice of the Arbitration Agreement
7    and that incorporation of the AAA rules is an accepted practice and not ambiguous.

8    As to Plaintiffs' first two arguments, this Court agrees with Amazon—
9    Plaintiffs were on sufficient notice of both the existence and contents of the
10   Arbitration Agreement. As to Plaintiffs' third argument, the Court finds that while
11   the reference to the AAA rules is somewhat ambiguous, the degree of ambiguity
12   involved did not deprive Plaintiffs of a reasonable opportunity to understand the
13   terms of the Agreement such that Plaintiffs were denied meaningful choice. Thus,
14   the Arbitration Agreement is not procedurally unconscionable.

### a. Size and Placement of Textual Notice

16   As Plaintiffs acknowledge, assent to a website's terms and conditions is
17   governed by whether the website provides "reasonable notice" to the customer of the
18   terms and conditions. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31–32
19   (2d. Cir. 2002) (holding that website users did not assent to an online agreement
20   when they did not have reasonable notice of the terms and conditions); *see also In re
21   Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 893 F.Supp.2d 1058, 1064
22   (D. Nev. 2012) ("Where, as here, there is no evidence that plaintiffs had actual
23   knowledge of the agreement, the validity of a browsewrap contract hinges on
24   whether the website provides reasonable notice of the terms of the contract."). Here,
25   the Court finds that Plaintiffs did have reasonable notice. The text of the notice,
26   which reads "By placing your order, you agree to Amazon.com's privacy notice and
27   conditions of use," is the first line of the checkout page entitled "Review your
28   order." (Weitmann Decl., Exh. C at 18.) The notice is located directly underneath the

1  "Review your order" header such that it is clearly visible when viewing the page. *Id*.

2  The text is somewhat smaller than the text beneath it, but the hyperlink to the COUs

3  is set off in blue-colored font. *See Nicosia v. Amazon.com, Inc*., 84 F.Supp.3d 142,

4  152 (E.D.N.Y. 2015) (finding that Plaintiff was, at a minimum, on inquiry notice of

5  Amazon's COUs in part because of "the conspicuous placement of the hyperlink to

6  the current Conditions of Use [at the top of] the checkout page"); *see also Nguyen v.*

7  *Barnes Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("[W]here the website

8  contains an explicit textual notice that continued use will act as a manifestation of

9  the user's intent to be bound, courts have been more amenable to enforcing

10  browsewrap agreements."). Plaintiffs need not scroll to another part of the checkout

11  page or click on any additional link to be put on notice that they are bound by the

12  COUs when they place an order. *See Specht*, 306 F.3d at 32 (finding that internet

13  users had insufficient notice that they were binding themselves to contract terms

14  when they were required to scroll through multiple screens to locate the notice). The

15  notice of the COUs may not dominate the entire checkout page display, but it is

16  reasonable notice, and that is all that is required. Accordingly, the Court finds that

17  the size and placement of the textual notice does not support a finding of procedural

18  unconscionability.

19       **b.  Incorporation and Presentation of Arbitration Agreement**

20     Plaintiffs' argument that the incorporation of the COUs and location of the

21  Arbitration Agreement is "the electronic equivalent of fine print" is similarly

22  unpersuasive. Here, a blue-colored hyperlink at the top of the checkout page takes a

23  consumer directly to the COUs. Once the COUs are accessed, it is obvious to a

24  reasonable consumer that the COUs exceed the length of what is initially shown on

25  the screen, and that a consumer would need to scroll down to read the conditions,

26  including the Arbitration Agreement, in their entirety. (Weitmann Decl., Exh. A.)

27  The text of the Arbitration Agreement is the same size and font as the rest of the

28  COUs, and many of the provisions of the Agreement are in boldface for emphasis.

1    *See, e.g.*, *Brown v. MHN Gov't Servs., Inc.*, 306 P.3d 948, 954 (Wash. 2013) (finding

2    that an arbitration agreement lacked procedural oppression where the agreement

3    "was in the same typeface, font, and size as the rest of the [contract] and had a bold,

4    underlined heading labeled 'Mandatory Arbitration'"). Plaintiffs were under no time

5    pressure to assent to the Agreement immediately. *See Adler*, 103 P.3d at 784 (finding

6    that plaintiff had a reasonable opportunity to understand the terms of an arbitration

7    agreement where he presumably had "ample opportunity to contact counsel and

8    inquire about the meaning of its terms"). The Agreement itself is only a half-page

9    long and is written in plain language. Under these circumstances, Amazon's

10   incorporation of the Arbitration Agreement cannot fairly be characterized as hiding

11   important terms in a "maze of fine print." *Zuver*, 103 P.3d at 761 (holding that

12   important terms of an arbitration agreement were not hidden in a maze of fine print

13   where "the agreement's terms were in normal typeface and font, and the agreement

14   itself was only one page long"). Instead, the incorporation of the Agreement appears

15   to be the electronic equivalent of attaching important terms prominently and directly

16   to the main contract. Thus, the manner of incorporating the Arbitration Agreement,

17   and the location of the Agreement within the COUs, does not support a finding of

18   procedural unconscionability.

19                     **c.  Reference to Applicable Arbitration Rules**

20           The Court agrees with Plaintiffs that reference to the AAA rules in the

21   Arbitration Agreement is somewhat ambiguous. (Pls.' Opp'n 20:8–22.) As Plaintiffs

22   point out, the Agreement does not specify which set of AAA rules will govern

23   disputes that arise between Amazon and its customers. This lack of clarity is

24   compounded by the fact that different sets of rules appear equally applicable, and the

25   rules themselves are periodically updated. (Pls.' Opp'n 21:1 – 13.) By not making

26   explicit the specific set of rules that will apply to disputes brought under the

27   Arbitration Agreement, Amazon has complicated Plaintiffs' ability to fully

28   understand the terms of the Agreement.

The test, however, is whether Plaintiffs had a "reasonable opportunity" to understand important terms, not whether Amazon outlined the terms with maximum clarity. *Schroeder*, 544 P.2d at 23. Plaintiffs acknowledge that the rules referenced in the Arbitration Agreement most likely refer to either the "Consumer Arbitration Rules" or "Commercial Arbitration Rules." (Pls.' Opp'n 20:23–26.) A reasonable consumer would assume that the "*Consumer* Arbitration Rules" apply, particularly given Amazon's reference to the AAA's "Supplementary Procedures for *Consumer-Related* Disputes" in the Agreement. (Weitmann Decl., Exh. A at 8.) The Consumer Rules appear on the first page of the AAA website's listing of rules and require no special web-browsing expertise to locate. (Def.'s Reply 9:1–11.) And to the extent that consumers have questions about the applicable rules, they can call the AAA's toll-free number provided by Amazon in the Arbitration Agreement. *See Ekin v. Amazon Services, LLC*, 84 F.Supp.3d 1172, 1177–78 (W.D. Wash. 2014) (failing to find Amazon's reference to the AAA rules ambiguous when customers could obtain the governing rules from the website or toll-free telephone number provided in the arbitration agreement). Thus, the Court finds that while the reference to the applicable rules could be clearer, the degree of ambiguity involved does not rise to the level of procedural unconscionability.

### d. Conclusions Regarding Procedural Unconscionability

The Arbitration Agreement is a contract of adhesion, and the Agreement's reference to the AAA rules contains a degree of ambiguity. However, having considered whether Plaintiffs were deprived of meaningful choice under the totality of circumstances approach used by Washington courts, the Court finds that the Arbitration Agreement is not unenforceable on the basis of procedural unconscionability.

### 2. Substantive Unconscionability

Plaintiffs contend that the Arbitration Agreement is substantively unconscionable because (1) the Agreement allows Amazon to unilaterally change the

terms of the Agreement at any time without notice (Pls.' Opp'n 23:1–11), (2) Amazon expressly exempts certain intellectual-property related claims from arbitration (Pls.' Opp'n 23:20–22), and (3) the Agreement allows Amazon to recover attorney's fees if the arbitrator determines that a claim brought by a consumer is frivolous (Pls.' Opp'n 24:8–17). The Court addresses each of these arguments in turn.

### a.  Unilateral Right to Amend Agreement

Plaintiffs insist that Amazon's discretion to change the terms of the Arbitration Agreement unfairly allows Amazon to pick and choose which claims to arbitrate, making the Agreement substantively unconscionable. This argument fails, however, for the same reasons the Court discussed when addressing Plaintiffs' claim that the Agreement is illusory, namely (1) the performance obligations of both parties, including the core obligation to arbitrate disputes, is fixed and in effect under the current Agreement, and (2) the implied duty of good faith and fair dealing requires Amazon to exercise its discretion in a manner consistent with the justified expectations of the parties. These limitations on Amazon's discretion mean that the change-in-terms provision is not "unfairly one-sided" or "overly harsh," and thus is not substantively unconscionable.

### b.  Exemption from Arbitration for Intellectual Property Claims

The Arbitration Agreement provides that either party "may bring suit in court to enjoin infringement or other misuse of intellectual property rights." (Weitmann Decl., Exh. A at 8.) Plaintiffs argue that this exemption of intellectual property (IP) claims from arbitration unfairly favors Amazon because Amazon is the party with the primary interest in bringing these types of claims, while the average consumer is highly unlikely to bring an IP claim against Amazon. The result, Plaintiffs argue, is a substantively unconscionable term that allows Amazon to retain freedom to litigate in an area of particular interest to Amazon, while forcing Plaintiffs to arbitrate disputes most important to the average consumer. This Court disagrees.

First, the Court finds unpersuasive Plaintiffs' contention that it is "inconceivable" that an Amazon customer would bring an IP claim against Amazon. (Pls.' Opp'n 23:16–24:6.) Amazon customers presumably include authors, artists, amateur inventors, computer programmers, businesses and others, any of whom may have an interest in enjoining Amazon for reselling goods or using computer software in violation of IP rights. A customer may be less likely than Amazon to bring an IP claim, and may face an uphill battle succeeding, but the possibility is not so remote as to make this provision meaningless to Amazon customers and unfairly advantageous to Amazon. *Cf. Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F.Supp.3d 1341 (W.D. Wash. 2014) (seller and product designer bringing trademark, patent, and copyright claims against Amazon); *Routt v. Amazon.com, Inc.*, No. C12–1307JLR, 2012 WL 5993516 (W.D. Wash. 2012) (artist and designer bringing copyright infringement suit against Amazon); *Hendrickson v. Amazon.com, Inc.*, 298 F.Supp.2d 914 (C.D. Cal. 2003) (owner of copyright to motion picture bringing suit against Amazon for copyright infringement).

Second, even granting that the exemption provision benefits Amazon more than Plaintiffs, there is no indication that this advantage reflects anything more than the normal give-and-take of a contract. Parties to a contract will rarely derive equal benefits from the same provisions, and courts will not disturb the allocation of risks agreed to by the parties as they seek to secure the benefits of their bargain. *See* Restatement (Second) of Contracts § 208 cmt. d ("A bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party."); Rev. Code Wash. § 62A.2-302 ("The principle [of unconscionability] is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."). Here, where the arbitration exemption does not *deprive* Plaintiffs of anything or erect a barrier to vindicating their rights, the advantage Amazon derives from the exemption is not "overly harsh." *See, e.g.*,

*McKee*, 191 P.3d at 859 (holding a statute of limitations provision substantively unconscionable because it undermined consumers' ability to vindicate their statutory rights under the CPA); *Torgerson v. One Lincoln Tower, LLC*, 210 P.3d 318, 323 (Wash. 2009) (finding that a remedies limitation contained in an arbitration agreement was not substantively unconscionable where both parties were subject to the same limitation). Accordingly, the Court finds that the provision exempting certain IP claims from arbitration is not so one-sided as to justify a finding of substantive unconscionability.

### c.  Attorney Fees for Frivolous Claims

The Arbitration Agreement provides that "Amazon will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous." (Weitmann Decl., Exh. A at 8.) Plaintiffs contend that this provision is substantively unconscionable because it potentially offers Amazon attorney's fees for which Amazon might not otherwise be eligible. The Court finds Plaintiffs' arguments unpersuasive for at least three reasons.

First, the attorney's fees provision at issue merely restates a basic policy codified in Washington law that a prevailing party may seek expenses for opposing a frivolous claim or defense. Rev. Code Wash. § 4.84.185 ("In any civil action, the court having jurisdiction may, upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action[.]"). Indeed, the attorney's fees provision at issue is arguably redundant because the Agreement already provides that the arbitrator can award the "same damages and relief as a court" applying the applicable law. Given that Washington courts can award attorney's fees pursuant to Rev. Code Wash. § 4.84.185, the arbitrator, by the terms of the Agreement, can do the same. Thus, the provision simply makes explicit a form of relief provided for in Washington law.

Second, to the extent Plaintiffs argue that the attorney's fee provision applies

– 27 –

only to Amazon, and thus denies Plaintiffs similar relief, Plaintiffs fail to understand the applicable law. Under Washington law, when a contract specifically provides for attorney's fees and costs for one party, that provision automatically applies to all parties. *McKee*, 191 P.3d at 859 ("When one party to a contract seeks to impose a unilateral attorney fee provision by contract, Washington's policy, by statute, is to convert the unilateral provision into a reciprocal contractual provision that applies equally to all parties to the contract."); Rev. Code Wash. § 4.84.330. Thus, the provision challenged here is not, in fact, "one-sided" because its facial exclusivity automatically triggers a mutuality of remedies.[7]

Finally, the attorney's fees provision here in no way limits Plaintiffs' right to seek attorney's fees under Washington law. Nor does it operate to deter consumers from pursuing relief against Amazon through arbitration. This makes the provision fundamentally different from attorney's fee provisions that Washington courts have found substantively unconscionable. In *Adler*, for example, the Washington Supreme Court held an attorney's fees provision substantively unconscionable because the provision required the petitioner to waive his right under Washington law to recover attorney's fees and costs. 103 P.3d at 786. In *Gandee*, the Washington Supreme Court held that a "loser pays" provision was substantively unconscionable partly on the grounds that the provision's fee-shifting effect chilled a borrower's ability to bring suit under Washington's Consumer Protection Act. 293 P.3d at 1200–01. Unlike *Adler* and *Gandee*, the provision challenged here neither limits Plaintiffs' access to attorney's fees available under Washington law, nor otherwise contravenes Washington policy. Accordingly, Plaintiffs have not demonstrated that the attorney's fees provision is substantively unconscionable.

---

[7] Plaintiffs also fail to appreciate the full implications of the provision in the Agreement allowing an arbitrator to award the "same damages and relief as a court." Under Washington law, a court may award a prevailing party attorney's fees for opposing a frivolous claim *or* defense. Thus, just as Amazon can seek attorney's fees for opposing a frivolous claim by Plaintiffs, Plaintiffs can seek attorney's fees for opposing a frivolous defense by Amazon. Rev. Code Wash. § 4.84.185.

15cv96

### d.  Conclusion Regarding Substantive Unconscionability

Having considered Plaintiffs' challenge to the Arbitration Agreement's provisions regarding Amazon's right to amend the Agreement, the exemption from arbitration for IP-related claims, and Amazon's ability to seek attorney's fees for frivolous claims, the Court finds that none of the cited provisions are unfairly one-sided or overly harsh as to justify a finding of substantive unconscionability.[8]

### E.    The Arbitration Agreement is Valid and Enforceable

The Arbitration Agreement is neither illusory, nor procedurally or substantively unconscionable. Thus, the Court finds that (1) the Arbitration Agreement is valid, and (2) as Plaintiffs concede, the dispute falls within the scope of the Agreement. Accordingly, the Court must submit Plaintiffs' claims to arbitration. 9 U.S.C. § 4.

### F.    Dismissal or Stay

The FAA provides that when the claims asserted by a party are "referable to arbitration," the court shall "stay the trial of the action until such arbitration has been had." 9 U.S.C § 3. Amazon, however, asks this Court to dismiss, rather than stay, the case because the Arbitration Agreement encompasses all of Plaintiffs' claims. (Def.'s Reply 14:8–13.)

Dismissal in favor of arbitration is within the discretion of the court. *See, e.g.*, *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). Although staying, and not dismissing, is the remedy specifically contemplated by the FAA, it is well-settled that the court "may compel arbitration and dismiss the action" where an arbitration agreement is "broad enough to cover all of a plaintiff's claims."

---

[8] It is worth briefly noting aspects of the Arbitration Agreement that Plaintiffs fail to mention. For example, the Agreement binds Amazon to reimburse all filing, administration, and arbitrator fees for any non-frivolous claims totaling less than $10,000. The Agreement also gives consumers control over the form and location of the arbitration, including the option of having the arbitration conducted in person in the county where the consumer lives. These relatively pro-consumer features of the Agreement could not save provisions that are otherwise substantively unconscionable. But their inclusion does suggest an overall lack of unconscionable effect.

*Hopkins & Carley, ALC v. Thomson Elite*, No. 10–CV–05806–LHK, 2011 WL 1327359, at *7 (N.D. Cal. Apr. 6, 2011); *see also Dixon v. NBCUniversal Media, LLC*, 947 F.Supp.2d 390, 405 (S.D.N.Y. 2013) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.") (internal quotation marks and citation omitted). Plaintiffs make no argument that a stay is more appropriate than dismissal. Accordingly, the Court dismisses this action without prejudice.

## IV.   CONCLUSION & ORDER

The purpose of contract law is to facilitate the enforcement of consent-based obligations. However, "[i]n order for contract law to function, it must regulate obligation well beyond explicit consent." Roy Kreitner, *Fear of Contract*, 2004 Wis. L. Rev. 429, 430 (2004). The doctrine of unconscionability plays a key role in this regard by ensuring that both the process preceding a party's manifestation of assent and the substance of the obligations agreed to are governed by fundamental, if difficult to define, standards of reasonableness and fairness. *See* John A. Spanogle, Jr., *Analyzing Unconscionability Problems*, 117 U. Pa. L. Rev. 931, 935–36 (1969) (arguing that unconscionability doctrine can transform and strengthen traditional notions of freedom of contract by allowing courts to examine unbargained terms and subject unilaterally determined terms to special scrutiny). This Court believes that unconscionability doctrine should be liberally construed to effectuate the justifiable expectations of the parties, protect consumers facing a gross inequality of bargaining power vis-à-vis sophisticated business organizations, and prevent stronger parties from unjustly benefiting from bargains built on deception and exploitation. But the Court cannot adjust *ex post* the risks and rewards of a contract when neither the bargaining process nor substance of the agreement suggest that assent was not genuine or that the consideration exchanged was grossly imbalanced. Here, Plaintiffs agreed to arbitrate disputes relating to Plaintiffs' dealings with Amazon in exchange for the convenience of accessing and using Amazon's online marketplace. Plaintiffs

may not have read every word of the Agreement, or even any of the Agreement, but their assent to it cannot be regarded as an assumption of abnormal risk that would justify judicial intervention. *See, e.g.*, John E. Murray, Jr., 31 Pitt. L. Rev. 1, 15 (1969) ("If the risk evidenced by the written clause [of a contract] is either expected or not unexpected, it should apparently control, since the application of either standard does not ask a party to assume an abnormal risk."). This Court views the public policies behind unconscionability doctrine as too important to risk undermining the doctrine's legitimacy through indiscriminate application.

Amazon's Arbitration Agreement is not a paragon of consumer protection. But it is not unconscionable. Plaintiffs had meaningful choice and a reasonable opportunity to understand the Agreement when they assented, and the terms of the Agreement itself are not overly harsh. Nor is the Agreement illusory. Although Amazon retains the discretion to change the terms of the Agreement, the core obligation to arbitrate is fixed, and Amazon's discretion is bounded by the duty of good faith and fair dealing. This Court may hope that Amazon would take every possible step to maximize consumers' ability to make informed decisions. The law of contracts, however, imposes less lofty expectations.

For the foregoing reasons, the Court **GRANTS** Amazon's Motion to Compel Arbitration and **DISMISSES** this action **WITHOUT PREJUDICE**. The Clerk of Court shall close the case file.

**IT IS SO ORDERED.**


**DATED:  October 20, 2015**

Hon. Cynthia Bashant
United States District Judge

15cv96